**TEXAS POWER AND LIGHT COMPANY, Appellant and Cross-Appellee,**

v.

**Robert P. BARNHILL, Appellee and Cross-Appellant.**

**No. 8986.**

Court of Appeals of Texas,
Texarkana.

Aug. 3, 1982.

Rehearing Denied Aug. 31, 1982.

J. D. McLaughlin, Fisher, McLaughlin & Harrison, Paris, for appellant and cross-appellee.

Joe E. Griffith, Crockett, for appellee and cross-appellant.

Before CORNELIUS, C. J., and HUTCHINSON and BLEIL, JJ.

HUTCHINSON, Justice.

This is a breach of contract suit.

Frank Thrasher instituted a suit on a sworn account against Robert P. Barnhill, the appellee and cross-appellant. Barnhill filed a third party action against Texas Power and Light Company (T P & L), appellant and cross-appellee, alleging a breach of contract and seeking both actual and exemplary damages. Thrasher obtained a summary judgment against Barnhill and the third party action against T P & L was tried before a jury. T P & L appeals from the award of exemplary damages and Barnhill appeals the trial court's action in disregarding the jury's finding that $180,000.00 would reasonably compensate him for damage to his business.

In November of 1976, T P & L and Barnhill entered into a written contract in which Barnhill agreed to clear a right of way upon which T P & L planned to erect a transmission line. Barnhill hired Frank Thrasher on an hourly basis to do part of the work. He worked from December of 1976 until June of 1977 when he left because Barnhill owed him over $44,000.00. On June 27, 1977, while Barnhill was clearing the right of way, Tyler O'Teter, T P & L's Supervisor of Contract Construction, brought him a letter informing him that his contract had been terminated. This litigation followed.

In response to special issues the jury found that: No. 1) T P & L owed Barnhill $43,344.32 at the time his contract was cancelled; No. 2) T P & L did not have good cause to terminate the contract; No. 3) Barnhill would not have made any profit had he been allowed to complete the contract; No. 4) Barnhill incurred damage to his business from the time of the cancellation of the contract to the present date; No. 4–A) the sum of $180,000.00 would reasonably compensate for the damage to his business; No. 5) T P & L acted intentionally or willfully or with a degree of gross negligence which indicated a fixed purpose to bring about the cancellation of the contract; No. 6) T P & L previously or subsequently approved the acts of its agents; and No. 7) $100,000.00 would adequately punish T P & L for its conduct.

Both parties moved for a judgment with T P & L requesting that the court disregard the jury's answers to Special Issues Nos. 4, 4–A, 5, 6, and 7. The court disregarded the answer to Special Issue No. 4–A and entered judgment for Barnhill for the sum of $143,344.22.

T P & L by its first eight points of error deals with the court's award of exemplary damages, asserting that it was error because: this was a breach of contract action and no independent tort was pleaded, proved or found; the jury failed to find actual damages; there was no evidence or insufficient evidence to warrant submission of the issue; the pleadings failed to support an issue on exemplary damages; there was no evidence or insufficient evidence to warrant a finding that T P & L condoned or approved of the action relied on for recovery of exemplary damages.

In Texas, it has long been the rule that exemplary damages cannot be recovered for a simple breach of contract, where the breach is not accompanied by a tort, even though the breach is brought about capriciously and with malice. *A. L. Carter Lumber Co. v. Saide,* 140 Tex. 523, 168

S.W.2d 629 (1943); *Adams v. Big Three Industries, Inc.*, 549 S.W.2d 411 (Tex.Civ. App.—Beaumont 1977, writ ref'd n. r. e.). If, however, in addition to or contemporaneously with a breach of contract, a tort is pleaded and proved, punitive damages may be recovered. It is not necessary for the tort and the breach of contract to arise out of separate and distinct transactions, but both the tort and the breach of contract must be separately pleaded and proved. *Crutcher-Rolfs-Cummings, Inc. v. Ballard*, 540 S.W.2d 380 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977); *McDonough v. Zamora*, 338 S.W.2d 507 (Tex.Civ.App.—San Antonio 1960, writ ref'd n. r. e.).

 T P & L asserts that Barnhill has completely failed to plead or prove that a tort was committed. Barnhill alleged that T P & L's termination of the contract was "arbitrary, capricious, and unwarranted" and done with "malicious intent" and here asserts that T P & L's actions constituted not only a breach of contract, but also the tort of wrongful termination of employment. He claims that T P & L's conduct toward him was harsh and oppressive and cites *K.W.S. Mfg. Co., Inc. v. McMahon*, 565 S.W.2d 368 (Tex.Civ.App.—Waco 1978, writ ref'd n. r. e.), as controlling. We do not agree. In *K.W.S.* the court called McMahon's firing a "patently wrongful" termination of employment and emphasized that all the defendants admitted that the *only* reason McMahon was fired was because he insisted that they honor their promise of giving him ownership of 5% of the stock. As stated in *McDonough v. Zamora*, supra, "there must be something more than a malicious and oppressive breach of contract, for even an intentional breach of a contract is not punishable by punitive damages." The evidence presented in the present case was not factually sufficient to establish an independent tort committed by T P & L and exemplary damages are not recoverable.

As before noted, both T P & L and Barnhill find fault with the court's actions in regard to issues 4 and 4–A. T P & L

asserts that the submission of the issues, even though no recovery thereon was allowed, was error and Barnhill, on his cross-appeal, contends that the court erred in disregarding the jury's answer to 4–A because it was supported by the pleadings and by legally and factually sufficient evidence.

 As stated before, the jury found that Barnhill's *business* had been damaged (Special Issue No. 4) in the amount of $180,-000.00 (Special Issue No. 4–A). The pleadings pleaded damages to his "business reputation" and the prayer sought damages to "plaintiff's reputation." T P & L objected that issues No. 4 and No. 4–A were not supported by the pleadings. Its objections, however, were stock objections and too general to preserve the point on appeal. Tex. R.Civ.P. 274 reads, in part, "A party objecting to a charge *must point out distinctly the matter to which he objects and the grounds of his objection.*" (Emphasis added). One of the purposes of Rule 274 was to discourage the use of general stock objections. *Monsanto Company v. Milam*, 494 S.W.2d 534, 537 (Tex.1973).

The point is not preserved because T P & L's objections did not "make it apparent that the trial court, though fully cognizant of the ground of complaint, nevertheless chose to submit the issue." *Bell v. Missouri-Kansas-Texas Railroad Co. of Texas*, 334 S.W.2d 513, 516 (Tex.Civ.App.—Fort Worth 1960, writ ref'd n. r. e.).

 T P & L also argues that the court erred in submitting issues No. 4 and No. 4–A without giving the jury any guidelines as to the proper measure of damages. Again, T P & L failed to adequately preserve this point for appeal. T P & L failed to distinctly point out its grounds for objection as required by Tex.R.Civ.P. 274. It stated merely that "there is nothing in this record to give the jury any guidelines about answering said special issue . . ." and that "the issue as framed permits and requests the jury to engage in speculation and conjecture with regard to damage to business. . . ." See *Hicks v. Fredericks*, 286 S.W.2d 315, 317 (Tex.Civ.App.—Beaumont 1956, no writ). A complainant should indi-

cate the proper measure of damages when objecting to the court's charge upon the measure of damages. *International Great-Northern R. Co. v. Acker,* 128 S.W.2d 506, 523 (Tex.Civ.App.—Eastland 1939, writ dism'd judgmt cor.). T P & L also failed to request and tender a substantially correct explanatory instruction setting forth the guidelines. Tex.R.Civ.P. 279. *Jackson v. Fontaine's Clinics, Inc.,* 499 S.W.2d 87 (Tex. 1973), cited by T P & L as controlling, is inapposite. In that case the Supreme Court held that a charge was "fatally defective, because it simply failed to guide the jury to a finding on *any proper legal measure* of damages." (Emphasis in original) *Id.,* at 90. The *Jackson* case is distinguishable, however, since its damage issue was submitted with a *defective* explanatory instruction and because it is not clear from the opinion whether the complaining party requested an explanatory instruction which properly set forth the measure of damages.

▮ Having dealt with T P & L's objections to the submission of the issues we must now review the trial court's action in disregarding the jury's answer to Special Issue No. 4–A. We hold that the trial court erred.

Rule 301 of the Texas Rules of Civil Procedure provides, in pertinent part, "that upon motion and reasonable notice the court may ... disregard any Special Issue Jury Finding that has no support in the evidence." "No evidence," as used in connection with this rule does not mean literally no evidence at all. Instead, it encompasses "those situations wherein by the application of established principles of law, the evidence is deemed legally insufficient to establish an asserted proposition of fact." *National Life and Accident Insurance Co. v. Shern,* 389 S.W.2d 726–728 (Tex.Civ.App.— Austin 1965, no writ). According to McDonald's treatise, the trial court may act pursuant to Rule 301 where "the pleadings make an issue, or the issue is tried outside the pleadings by express or implied consent, but the evidence either (1) is insufficient to raise a special issue mistakenly submitted and incorrectly answered; or (2) is insuffi-

cient to raise any jury issue." 4 McDonald's, Texas Civil Practice § 17.32 (rev. 1971). See also *Mason v. Pyramid Derrick & Equipment Co.,* 597 S.W.2d 490, 491 (Tex. Civ.App.—Beaumont 1980, writ ref'd n. r. e.); *Burch v. Southwest Title Company,* 450 S.W.2d 752, 753 (Tex.Civ.App.—San Antonio 1970, no writ).

In determining whether the trial court erred in disregarding the jury's answer to Special Issue No. 4–A this Court must consider only the evidence and the reasonable inferences therefrom which support the jury's answer. *C. & R. Transport, Inc. v. Campbell,* 406 S.W.2d 191, 193 (Tex. 1966); *Saper v. Rodgers,* 418 S.W.2d 874, 876 (Tex. Civ.App.—Houston [1st Dist.] 1967, writ ref'd n. r. e.). Barnhill testified that, as a result of the breach of contract, he was unable to secure the bond necessary to obtain an $840,000 contract with South Texas Electric Company in 1978. Although Barnhill could not obtain the South Texas job himself, he successfully "bid the job" for another contractor. Barnhill also testified that he lost an opportunity to bid on a job with Brazos Electric Co-Op (no dollar figure given) because he could not secure a bond; that he was unable to bid on a 1.2 million dollar contract with the Bureau of Reclamation because he was refused a bond; and that he was terminated from maintenance jobs worth $300,000.00 to $400,000.00 with T P & L. Tyler O'Teter, T P & L's supervisor on the job, stated that he did not know what consequences would inure to Barnhill because of his termination. Yet, Barnhill, a longtime contractor for T P & L, had worked on outside contracts since 1960. Barnhill also testified that he usually figured in 20–25% profit in his bids. Another contractor testified that he normally included 20% in his bids for this kind of work, while one of the contractors who finished the T P & L job stated that he normally bid in 10% "clear" profit; that is, profit after taxes, insurances and hidden costs.

▮ A general rule of contract law, illustrated by the famous case of *Hadley v. Baxendale,* 9 Exch. 341 (1854), is that the non-breaching party in a breach of contract action may recover those damages,

"as may fairly and reasonably be considered either arising naturally; i.e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach."

See 5 A. Corbin, Contracts § 1007, n. 1.5 (1964). This case involves a specific application of this rule. The only damage to his business for which Barnhill had any apparent basis for recovery under contract law was lost profits from collateral contracts. Lost profits from collateral contracts, however, are recoverable only if such collateral contracts are known to or are within the contemplation of the parties at the time they enter into the contract which is subsequently breached. *Longview Const. & Dev., Inc. v. Loggins Const. Co.,* 523 S.W.2d 771, 777–778 (Tex.Civ.App.—Tyler 1975, no writ); *Grand Prairie Gravel Co. v. Joe B. Wills Co.,* 188 S.W. 680, 685–686 (Tex.Civ. App.—Amarillo 1916, writ ref'd). Also, only those lost profits that can be shown with reasonable certainty by competent evidence may be recovered. See *Ganda, Inc. v. All Plastics Molding, Inc.,* 521 S.W.2d 940, 943 (Tex.Civ.App.—Waco 1975, writ ref'd n. r. e.); *General Supply and Equipment Co., Inc. v. Phillips,* 490 S.W.2d 913, 921 (Tex. Civ.App.—Tyler 1972, writ ref'd n. r. e.). The profits need not be "susceptible to exact calculation; it is sufficient that there be data from which they may be ascertained with a reasonable degree of certainty and exactness." *General Supply and Equipment Co., Inc. v. Phillips,* supra.

Viewing the evidence in the light most favorable to the jury's answer, Barnhill sufficiently established losses from collateral contracts, e.g., the loss of an $840,000.00 contract. Although the actual amount of lost profits is subject to dispute, there is evidence from which the jury could calculate damages with a reasonable degree of certainty. And while there is no direct evidence that the parties contemplated T P & L was aware of Barnhill's collateral contract, there is a very strong inference that

T P & L knew of them, given T P & L's long-term relationship with Barnhill. The court therefore erred in disregarding the jury's finding of $180,000.00 in damages to Barnhill's business.

The last issue concerns T P & L's argument that it was entitled to the submission of the following issue and instruction:

"Do you find from a preponderance of the evidence that R. P. Barnhill prior to June 27, 1977, failed to perform in a professional manner the duties of general contractor under the contract in question?"

The instruction also requested:

"The work of general contractor is professional in nature and that anyone agreeing to do the same is bound to exercise such care, skill and faithfulness in performing such work as would be reasonably expected of other individuals similarly situated."

■ There is a common law duty accompanying each contract "to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract." *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508, 510 (1947). Under certain circumstances this duty would serve as the basis for an affirmative defense issue. See *New Trends, Inc. v. Stafford-Lowdon Co.,* 537 S.W.2d 778 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n. r. e.). Here the requested issue is merely an evidentiary issue, not a controlling one. It is covered within the scope of Special Issues No. 1 and No. 2. T P & L did not plead a tort, although the pleadings—if read liberally—allege that Barnhill failed to perform in a workmanlike manner. Unworkmanlike performance, as an evidentiary issue, could serve to reduce the recovery under Special Issue No. 1, for instance. 14 Tex.Jur.3d *Contracts* § 287 (1981). Special Issue No. 2 also subsumes the unworkmanlike performance issue since Barnhill's alleged breach of this duty would give T P & L good cause to terminate the

contract. The special issue was therefore properly refused.

The cause is reversed and remanded with instruction that the judgment be amended preserving the sum of $43,344.32 as the sum of money awarded to Robert P. Barnhill by Texas Power and Light Company under the contract, deleting the $100,000.00 of punitive damages, and adding the $180,000.00 for the damage to Robert P. Barnhill's business.